FILED BY

00 SEP -5 PM 3:19

CLERK U.S. DIST. CT.
S.D. OF FL.-MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6205-CR-HUCK
Magistrate Judge Brown

UNITED STATES OF AMERICA )
)
)
)
)
v. )
)
)
STEVEN MELTON KIVETT )
_____)

## GOVERNMENT'S OPPOSITION TO DEFENDANT
## KIVETT'S MOTION TO SUPPRESS STATEMENTS

The United States, by and through its undersigned counsel, hereby opposes Defendant Kivett's Motion To Suppress Statements, and that for the following reasons the motion should be denied :

1. Defendant filed this motion to suppress all statements made by the defendant to officers of the United States Coast Guard (USCG) and then repeated to two agents of the United States Border Patrol. On July 16, 2000, officers of the USCG boarded the boat of the defendant, which was sailing in the Straits of Florida, because the number of persons aboard the boat seemed too large for the size of the vessel. The officers questioned the defendant as to the nationality of the persons aboard, the last port of call, the next port of call, the purpose of the voyage among other questions. The defendant stated that the nine other persons were Bahamian, and that they left Freeport on July 15, 2000 at 2230 hours. The defendant stated that he was taking the passengers to Lighthouse Point, Florida. The defendant stated that the purpose of the trip was to

1

bring them to the US for a shopping trip at a local flea market. The defendant said he was paid $100 each to take the nine persons to the US. The defendant claimed that some of the persons were to spend the day shopping and then return to the Bahamas with him for an additional $100 and others were to stay with relatives. The defendant told the officers of the USCG that all nine passengers were Bahamian and that they all had the necessary papers or identification to enter the US.

2. As the officers were speaking to the defendant they overheard some of the passengers speaking French. One of the officers asked a few of the passengers where they were born, and they said "Haiti." The defendant did not look surprised by their answers, but said "Aw man, they said they were Bahamian." One of the officers asked the defendant how he came to have these people onboard, and the defendant said he was sitting in a bar in the Bahamas talking about coming to the US when one of the passengers, Michael Joseph, offered to pay him $100 per person to take the nine people to the US. The defendant said he agreed and Joseph collected the $900 for all the passengers. The defendant also told the USCG officers that prior to the trip he had gone shopping at Publix for many spare gallons of water, containers of juice, extra fruit, and snack food.

3. All the passengers were determined to be Haitians without documents entitling them to enter the US. All the passengers were then transported to the Coast Guard Cutter Maui, and the USCG officers remained on the defendant's boat in order to escort it back to Fort Lauderdale. It was at that point that the defendant was taken into custody and read his <u>Miranda</u> rights. The defendant stated that he understood his rights and did not wish to make any statements without his attorney present. However, without prompting from either of the USCG officers, the

defendant asked if he would be charged or prosecuted or if his boat would be seized. One of the officers said that there was a good possibility, but that it was not up to him. The defendant then said, "Oh well, I only paid $6,000 for it." The defendant then went on to restate his story and added that Michael Joseph spoke very good English and that is how they had communicated on the boat.

4. After the defendant was taken to shore he was taken into custody by agents of the United States Border Patrol. The agents read him his <u>Miranda</u> rights at which time the defendant repeated some of the statements made to the officers of the USCG, and then invoked his right to counsel.

5. Thus, there are three groups of statements made by the defendant. First, there are the statements made to the officers of the USCG after boarding. Second, there are the statements that the defendant made without prompting to the officers of the USCG after invoking his <u>Miranda</u> rights. Third, there are the statements repeated to the agents of the US Border Patrol after the defendant came ashore. With respect to the third set of statements made to the agents of the US Border Patrol, the government does not intend to call them as witnesses in its case-in-chief. The government will only call the Border Patrol agents for impeachment if the defendant testifies and denies making any of the statements. See <u>Oregon v. Hass</u>, 420 US 714, 723-24 (1975). (Testimonial evidence obtained in violation of <u>Miranda</u> is admissible to impeach a defendant's contradictory testimony at trial). With respect to the first and second set of statements, they are clearly admissible and the government intends to introduce those statements at trial.

6. With respect to the first group of questions, they were routine border questions,

3

which do not require the officers to provide <u>Miranda</u> warnings. See <u>US v. Rioseco</u>, 845 F. 2d 299 (11th Cir. 1988).  As stated in <u>Rioseco</u>, "[I]n order for a court to conclude that a suspect is in custody, it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave." <u>United States v. Phillips</u>, 812 F.2d 1355, 1360 (11th Cir.1987) (quoting <u>Minnesota v. Murphy</u>, 465 U.S. 420, 430, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984)).  The officers initially questioned the defendant as to the nationality of the persons aboard, the last port of call, the next port of call, the purpose of the voyage among other questions.  These were clearly routine boarding questions.  When it appeared that the passengers may be Haitians and not Bahamians the USCG officers asked additional questions of the defendant in order to see if he could clarify the situation.  When the officers determined that the passengers were all Haitians who were without any documents entitling them to enter the US, then the defendant was read his <u>Miranda</u> rights, because the officers were taking him into custody and he was not free to leave.  Thus, the initial questioning did not require <u>Miranda</u> warnings, and the statements given by the defendant are clearly admissible.

    7.    With respect to the statements made by the defendant after he invoked his right to counsel, the statements are admissible, because they were not in response to interrogation. Instead, they were made by the defendant without prompting by the officers.  A defendant waives his right to counsel when, after invoking his right to counsel, he initiates a discussion with law enforcement officers. See <u>Oregon v. Bradshaw</u>, 462 US 1039, 1045-46 (1983)("Well, what is going to happen to me now?" amounted to waiver of right to counsel); <u>Henderson v. Dugger</u>, 925

F.2d 1309, 1312-13 (11th Cir. 1991)(waiver valid despite prior invocation of right to counsel when defendant asked what would happen next). Certainly, defendant's question to the USCG officers about whether he will be prosecuted or his boat seized amounted to a waiver of his Miranda rights. Thus, his subsequent statements were admissible.

## CONCLUSION

For the foregoing reasons, the defendant's motion to suppress statements should be denied.

Respectfully submitted,

GUY LEWIS
UNITED STATES ATTORNEY

By: _____
JEFFREY N. KAPLAN
ASSISTANT U.S. ATTORNEY
FLA. BAR No. A05500030
500 East Broward Boulevard
7th Floor
Ft. Lauderdale, FL 33394
Telephone: (954) 356-7255x3515
Facsimile: (954) 356-7228
E-Mail Address:
(Jeffrey.Kaplan@justice.usdoj.gov)

5

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing was served by mail on September 5, 2000, to Clayton Kaeiser, Esq., 28 W. Flagler Street, Suite 301, Miami, FL 33130.

By: _____
JEFFREY N. KAPLAN
ASSISTANT US ATTORNEY